# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 16-1494V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| EBONIE WEAVER, *parent of T.M., a minor*, | * * * | Chief Special Master Corcoran |
| Petitioner, | * * | Filed: May 1, 2025 |
| v. | * * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * | |
| Respondent. | * * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Edward Kraus*, Kraus Law Group, LLC, Chicago, IL, for Petitioner.

*Meghan Murphy*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On November 14, 2016, Ebonie Weaver, on behalf of her minor daughter, T.M., filed a petition seeking compensation under the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1) at 1. Petitioner alleged that T.M. suffered a "seizure disorder and its sequelae that were more likely than not caused by an adverse reaction to DTaP, Hib, IPV, Rotateq, and hepatitis B vaccines administered to her on December 10, 2013." *Id.* Petitioner further alleged that "T.M. also experienced a significant worsening of her developmental delays and was assessed to be more than 50 percent delayed in all areas." *Id.* at 9. On May 8, 2023, I issued a Remand Ruling on Entitlement in favor of Petitioner. *See* Ruling, dated May 8, 2023 (ECF No. 93). The parties have since then endeavored to agree on the proper amount of damages.

On April 30, 2025, Respondent filed a proffer proposing an award of compensation.

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Proffer, dated Apr. 30, 2025 (ECF No. 111). I have reviewed the filing, and based upon that review I conclude that the Respondent's proffer (as attached hereto) is reasonable. I therefore adopt it as my Decision in awarding damages on the terms set forth therein.

The proffer awards:

- A lump sum payment of **$1,537,438.76**, representing compensation for life care expenses in the first year after judgment ($69,676.14), lost future earnings ($1,217,762.62), and pain and suffering ($250,000.00), to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner as guardian(s)/conservator(s) of the estate of T.M., for the benefit of T.M. (with the proffer specifying confirmation of Petitioner's guardianship capacity before payment is made);

-  A lump sum payment of **$89,412.29**, representing compensation for satisfaction of the Illinois Department of Healthcare and Family Services Medicaid lien, payable jointly to Petitioner and:

    Illinois Department of Healthcare Family Services
    P.O. Box 19146
    Springfield, Illinois 62794-9146
    Case Number: 93-226-0106397791
    ATTN: HFS Representative

    Petitioner agrees to endorse this payment to the Illinois Department of Healthcare and Family Services; and

- An amount sufficient to purchase the annuity contract, subject to the conditions described in Section II. C. in the Proffer.

Proffer at II. These amounts represent compensation for all elements of compensation under 42 U.S.C. § 300aa-15(a) to which Petitioner is entitled.

I approve a Vaccine Program award in the requested amount set forth above to be made to Petitioner. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.

<u>/s/ Brian H. Corcoran</u>  
Brian H. Corcoran  
Chief Special Master

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| EBONIE WEAVER, <br> Parent of T.M., a minor, <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) No. 16-1494V <br> ) Chief Special Master Corcoran <br> ) ECF <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## RESPONDENT'S PROFFER ON AWARD OF COMPENSATION

On November 14, 2016, Ebonie Weaver, on behalf of her minor daughter, T.M., filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10 et seq., alleging that T.M. suffered a "seizure disorder and its sequelae that were more likely than not caused by an adverse reaction to DTaP, Hib, IPV, Rotateq, and hepatitis B vaccines administered to her on December 10, 2013." Petition at 1. Petitioner further alleges that "T.M. also experienced a significant worsening of her developmental delays and was assessed to be more than 50 percent delayed in all areas." Petition at 9. On May 8, 2023, Chief Special Master Corcoran issued a Remand Ruling on Entitlement in favor of petitioner. ECF Nos. 98, 100. Respondent now proffers the following regarding the amount of compensation to be awarded.[1]

---

[1] The parties have no objection to the amount of the proffered award of damages. However, respondent reserves his right, pursuant to 42 U.S.C. § 300aa-12(f), to seek review of the Chief Special Master's May 8, 2023, Remand Ruling on Entitlement, finding petitioner entitled to an award under the Vaccine Act. This right accrues following the issuance of the damages decision.

-1-

I.  **Items of Compensation**

   A.  Life Care Items

Respondent engaged life care planner Linda Curtis RN MS CCM CNLCP, and petitioner engaged Susan Guth, LCSW, CCM, CLCP, to provide an estimation of T.M.'s future vaccine-injury related needs. For the purposes of this proffer, the term "vaccine related" is as described in the Chief Special Master's May 8, 2023, Remand Ruling on Entitlement. All items of compensation identified in the life care plan are supported by the evidence and are illustrated by the chart entitled Appendix A: Items of Compensation for T.M., attached hereto as Tab A.[2] Petitioner agrees.

   B.  Lost Future Earnings

The parties agree that based upon the evidence of record, T.M. will not be gainfully employed in the future. Therefore, respondent proffers that T.M. should be awarded lost future earnings as provided under the Vaccine Act, 42 U.S.C. § 300aa-15(a)(3)(B). Respondent proffers that the appropriate award for T.M.'s lost future earnings is $1,217,762.62. Petitioner agrees.

   C.  Pain and Suffering

Respondent proffers that T.M. should be awarded $250,000.00 in actual pain and suffering. *See* 42 U.S.C. § 300aa-15(a)(4). Petitioner agrees.

---

[2] The chart at Tab A illustrates the annual benefits provided by the life care plan. The annual benefit years run from the date of judgment up to the first anniversary of the date of judgment, and every year thereafter up to the anniversary of the date of judgment.

  E.  <u>Medicaid Lien</u>

Respondent proffers that T.M. should be awarded funds to satisfy an Illinois Department of Healthcare Family Services Medicaid lien in the amount of $89,412.29, which represents full satisfaction of any right of subrogation, assignment, claim, lien, or cause of action the State of Illinois may have against any individual as a result of any Medicaid payments the State of Illinois has made to or on behalf of T.M. from the date of her eligibility for benefits through the date of judgment in this case as a result of her vaccine-related injury suffered on or about December 10, 2013, under Title XIX of the Social Security Act.

**II.** **Form of the Award**

The parties recommend that the compensation provided to T.M. should be made through a combination of lump sum payments and future annuity payments as described below, and request that the Chief Special Master's decision and the Court's judgment award the following:[3]

A. A lump sum payment of $1,537,438.76, representing compensation for life care expenses in the first year after judgment ($69,676.14), lost future earnings ($1,217,762.62), and pain and suffering ($250,000.00), to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement to petitioner as guardian(s)/ conservator(s) of the estate of T.M., for the benefit of T.M. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian(s)/conservator(s) of T.M.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of T.M., any such payment shall be made to the party or

---

[3] Should T.M. die prior to entry of judgment, the parties reserve the right to move the Court for appropriate relief. In particular, respondent would oppose any award for future medical expenses, lost future earnings, and future pain and suffering.

parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of T.M. upon submission of written documentation of such appointment to the Secretary. Further, if guardianship/conservatorship is no longer required under the laws of the state of Illinois after T.M. has attained the age of majority, any such payment shall be paid to T.M. upon submission of written documentation of the termination of guardianship/conservatorship to the Secretary.

      B. A lump sum payment of $89,412.29, representing compensation for satisfaction of the Illinois Department of Healthcare and Family Services Medicaid lien, payable jointly to petitioner and:

> Illinois Department of Healthcare Family Services
> P.O. Box 19146
> Springfield, Illinois 62794-9146
> Case Number: 93-226-0106397791
> ATTN: HFS Representative

Petitioner agrees to endorse this payment to the Illinois Department of Healthcare and Family Services.

      C. An amount sufficient to purchase the annuity contract,[4] subject to the conditions described below, that will provide payments for the life care items contained in the life care plan,

---

[4] In respondent's discretion, respondent may purchase one or more annuity contracts from one or more life insurance companies.

The parties further agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties and that no part of any annuity payments called for herein, nor any assets of the United States or the annuity company, are subject to execution or any legal process for any obligation in any manner. Petitioner and petitioner's heirs, executors, administrators, successors, and assigns do hereby agree that they have no power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by

as illustrated by the chart at Tab A attached hereto, paid to the life insurance company[5] from which the annuity will be purchased.[6]  Compensation for Year Two (beginning on the first anniversary of the date of judgment) and all subsequent years shall be provided through respondent's purchase of an annuity, which annuity shall make payments directly to petitioner only so long as T.M. is alive at the time a particular payment is due.  At the Secretary's sole discretion, the periodic payments may be provided to petitioner in monthly, quarterly, annual or other installments.  The "annual amounts" set forth in the chart at Tab A describe only the total yearly sum to be paid to petitioner and do not require that the payment be made in one annual installment.

   1.   Growth Rate

Respondent proffers that a four percent (4%) growth rate should be applied to all non-medical life care items, and a five percent (5%) growth rate should be applied to all medical life care items.  Thus, the benefits illustrated in the chart at Tab A that are to be paid through annuity

---

assignment or otherwise, and further agree that they will not sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

[5]  The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve.  The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

   a. A. M. Best Company:  A++, A+, A+g, A+p, A+r, or A+s;

   b. Moody's Investor Service Claims Paying Rating:  Aa3, Aa2, Aa1, or Aaa;

   c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating:  AA-, AA, AA+, or AAA;

   d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating:  AA-, AA, AA+, or AAA.

payments should grow as follows: four percent (4%) compounded annually from the date of judgment for non-medical items, and five percent (5%) compounded annually from the date of judgment for medical items.  Petitioner agrees.

        2.        <u>Life-Contingent Annuity</u>

The petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as T.M. is alive at the time that a particular payment is due.  Written notice shall be provided to the Secretary of Health and Human Services and the Life Insurance Company within twenty (20) days of T.M.'s death.

        3.        <u>Guardianship/Conservatorship</u>

No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian(s)/conservator(s) of T.M.'s estate.  If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of T.M., any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of T.M. upon submission of written documentation of such appointment to the Secretary.  Further, if guardianship/conservatorship is no longer required under the laws of the state of Illinois after T.M. has attained the age of majority, any such payment shall be paid to T.M. upon submission of written documentation of the termination of guardianship/conservatorship to the Secretary.

---

[6]  Petitioner authorizes the disclosure of certain documents filed by the petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

**III.** **Summary of Recommended Payments Following Judgment**

    A.    Lump Sum paid to the court-appointed guardian(s)/
           conservator(s) of the estate of T.M. for the benefit of T.M.:    **$1,537,438.76**

    B.    Medicaid lien:    **$ 89,412.29**

    C.    An amount sufficient to purchase the annuity contract described above in section II. C.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

C. SALVATORE D'ALESSIO
Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

ALEXIS B. BABCOCK
Assistant Director
Torts Branch, Civil Division

*/s/ Meghan R. Murphy*
MEGHAN R. MURPHY
Trial Attorney
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box l46, Benjamin Franklin Station
Washington, D.C.  20044-0146
Tel: (202) 616-4264
Email: Meghan.R.Murphy@usdoj.gov

Dated:  April 30, 2025

Appendix A:  Items of Compensation for Weaver (Malone)

| ITEMS OF COMPENSATION | G.R. | * | M | Lump Sum Compensation Year 1 2025 | Compensation Years 2-5 2026-2029 | Compensation Years 6-11 2030-2035 | Compensation Years 12-32 2036-2056 | Compensation Years 33-Life 2057-Life |
|---|---|---|---|---|---|---|---|---|
| Ins Premium | 5% | | M | 4,151.64 | 4,151.64 | 4,151.64 | 4,151.64 | |
| Ins Maximum out of Pocket | 5% | | | 7,800.00 | 7,800.00 | 7,800.00 | 7,800.00 | |
| Medicare Part B Premium | 5% | | M | | | | | 2,220.00 |
| Medicare Part B Deductible | 5% | | | | | | | 257.00 |
| Medigap G | 5% | | M | | | | | 1,420.44 |
| Medicare Part D | 5% | | M | | | | | 801.81 |
| Neurology | 5% | * | | | | | | |
| Mileage:  Neurology | 4% | | M | 103.60 | 103.60 | 103.60 | 103.60 | 103.60 |
| EEG | 5% | * | | | | | | |
| Emergency Room | 5% | * | | | | | | |
| Sedation for Dental Care | 5% | * | | | | | | |
| Care Management | 4% | | M | 2,370.00 | 2,370.00 | 2,370.00 | 2,370.00 | 2,370.00 |
| Levetiracetam | 5% | * | | | | | | |
| Diastat | 5% | * | | | | | | |
| Diapers | 4% | | M | 851.06 | 851.06 | 851.06 | 851.06 | 851.06 |
| Disposable Underwear | 4% | | M | 184.47 | 184.47 | 184.47 | 184.47 | 184.47 |
| Wipes | 4% | | M | 160.54 | 160.54 | 160.54 | 160.54 | 160.54 |
| Reusable Underpads | 4% | | M | 42.90 | 42.90 | 42.90 | 42.90 | 42.90 |
| Gloves | 4% | | M | 184.73 | 184.73 | 184.73 | 184.73 | 184.73 |
| Communication Device | 4% | * | | | | | | |
| Physical Therapy | 4% | * | | | | | | |
| Physical Therapy Mileage | 4% | | | 302.40 | 151.20 | | | |
| Occupational Therapy | 4% | * | | | | | | |
| Occupational Therapy Mileage | 4% | | | 302.40 | 151.20 | | | |
| Speech Therapy | 4% | * | | | | | | |
| Speech Therapy Mileage | 4% | | | 302.40 | 151.20 | | | |
| Assistive Tech Evaluation | 4% | * | | | | | | |
| ABA Assessment | 4% | * | | | | | | |
| ABA Treatment | 4% | * | | | | | | |
| Personal Care Attendant | 4% | | M | 52,920.00 | 52,920.00 | 52,920.00 | | |
| Community Integrated Living | 4% | | M | | | | 119,681.00 | 119,681.00 |

Appendix A:  Items of Compensation for Weaver (Malone)

Page 2 of 2

| ITEMS OF COMPENSATION | G.R. | * | M | Lump Sum Compensation Year 1 | Compensation Years 2-5 | Compensation Years 6-11 | Compensation Years 12-32 | Compensation Years 33-Life |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  | 2025 | 2026-2029 | 2030-2035 | 2036-2056 | 2057-Life |
| Community Day Services | 4% |  | M |  |  |  | 44,040.00 | 44,040.00 |
| Transportation Allowance | 4% |  | M |  |  |  | 3,353.00 | 3,353.00 |
| Lost Future Earnings |  |  |  | 1,217,762.62 |  |  |  |  |
| Pain and Suffering |  |  |  | 250,000.00 |  |  |  |  |
| Medicaid Lien |  |  |  | 89,412.29 |  |  |  |  |
| Annual Totals |  |  |  | 1,626,851.05 | 69,222.54 | 68,768.94 | 182,922.94 | 175,670.55 |

Note: Compensation Year 1 consists of the 12 month period following the date of judgment.
Compensation Year 2 consists of the 12 month period commencing on the first anniversary of the date of judgment.
As soon as practicable after entry of judgment, respondent shall make the following payment to the court-appointed guardian(s)/
conservators(s) of the estate of T.M. for the benefit of T.M., for lost future earnings ($1,217,762.62),
pain and suffering ($250,000.00), and Yr 1 life care expenses ($69,676.14): $1,537,438.76.
As soon as practicable after entry of judgment, respondent shall make the following payment jointly to
petitioner and the State of Illinois, as reimbursement of the state's Medicaid lien: $89,412.29.
Annual amounts payable through an annuity for future Compensation Years follow the anniversary of the date of judgment.
Annual amounts shall increase at the rates indicated in column "G.R." above, compounded annually from the date of judgment.
Items denoted with an asterisk (*) covered by health insurance and/or Medicare.
Items denoted with an "M" payable in 12 monthly installments at the discretion of respondent.